IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TANYA LAW-TILLERY,                      )
                                        )
      Plaintiff,                        )
                                        )
          v.                          )      Civil Action No. 1:25-cv-1045 (RDA/LRV)
                                        )
SERVICENOW, INC., *et al.*,             )
                                        )
      Defendants.                       )
_____ )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants ServiceNow, Inc., Alexandra Edwards, Chris Jones, and John McMillan's ("Defendants") Motion to Compel Arbitration (the "Motion"). Dkt. 9. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is ripe for disposition. Considering the Motion together with the accompanying Memorandum in Support (Dkt. 10), *pro se* Plaintiff Tanya Law-Tillery's Complaint (Dkt. 1), Plaintiff's Opposition (Dkt. 17), Defendants' Reply (Dkt. 18), and Plaintiff's Sur-Reply (Dkt. 19),[1] this Court GRANTS the Motion to Compel Arbitration and STAYS the proceedings.

---

[1] Plaintiff filed her Sur-Reply without seeking leave of Court in violation of the Local Rules. *See* E.D. Va. Loc. Civ. R. 7(F)(1) (establishing that, following the filing of the movant's reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of Court"). Plaintiff was specifically advised of this rule in the Court's *Roseboro* notice. Dkt. 12. Nonetheless, in deference to Plaintiff's *pro se* status, the Court considers the Sur-Reply in disposing of the Motion.

1

## I. BACKGROUND

### A. Factual Background[2]

On or about December 10, 2021, Defendant ServiceNow, Inc. ("ServiceNow") extended an offer of employment to Plaintiff, which included an Arbitration Agreement. Dkt. 10-1 ¶ 2.[3] The Arbitration Agreement has an e-signature dated January 6, 2022, with Plaintiff's name. *Id.* at 4. In relevant part, the terms of the Arbitration Agreement read as follows:

> If you and ServiceNow, Inc. or any of its successors, predecessors, or related entities (collectively, the "Company") have a legal dispute regarding your employment that cannot be resolved by mutual discussion between us, we each agree to resolve that dispute through binding arbitration before an arbitrator experienced in employment law regardless of when the dispute arises. This Arbitration Agreement shall become effective as of the date of your signature below.
>
> **Scope.** This agreement to arbitrate includes any disputes that the Company may have against you, and any disputes that you may have against the Company or any of its employees, supervisors, managers or agents, arising out of or relating to your employment, or application for employment, including but not limited to (1) any claims of discrimination, harassment or retaliation, (2) violation of any federal, state or local law, (3) any claims relating to your wages, compensation, training, or terms and conditions of employment, and (4) any claims relating to the termination of your employment. The arbitration shall be the exclusive and binding remedy for any such dispute and shall be used instead of any court action (including jury trial), which is hereby expressly waived.

*Id.*

Plaintiff began her role as a Renewal Account Manager on January 10, 2022. *Id.* ¶ 3. Plaintiff is a citizen of Virginia who worked remotely for ServiceNow's San Diego, California office. Dkt. 1 ¶

---

[2] For purposes of considering the instant Motion, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] Consideration of the declaration and Arbitration Agreement is proper on a motion to compel arbitration. *See Eubank v. Camping World RV Sales, LLC*, 764 F. Supp. 3d 321, 323 (E.D. Va. 2025) (noting that, when reviewing a motion to compel arbitration, "the Court may consider materials outside of the pleadings, including all relevant, admissible evidence submitted by the parties").

9. Plaintiff claims she received strong performance reviews prior to the time when the alleged discrimination began. *Id.* ¶ 12.

In August 2023, Plaintiff alleges that Plaintiff's manager said "you are angry" to Plaintiff. Dkt. 1 ¶ 13. After Plaintiff advised the manager of the "Angry Black Woman" stereotype, Plaintiff's manager again called her "angry" on January 18, 2024. *Id.*

On March 5, 2024, Plaintiff filed an internal complaint with ServiceNow's People Partner Manager, in which she alleges she documented "specific instances of discrimination." *Id.* ¶ 14. Following Plaintiff's internal complaint, Plaintiff alleges that her direct manager told Plaintiff's coworkers not to work with Plaintiff. *Id.* ¶ 15. Plaintiff further alleges that the manager also told one of Plaintiff's team members not to speak to Plaintiff because she was a "troublemaker." *Id.* Additionally, Plaintiff asserts that Plaintiff's manager took away one of Plaintiff's "territories" and replaced it with one that in which Plaintiff alleges she couldn't be successful. *Id.* The manager also requested that only Plaintiff send her an email of her schedule for remote work. *Id.*

Plaintiff spoke with Human Resources about the perceived retaliation on April 4, 2024, and again on December 20, 2024. *Id.* ¶¶ 16, 17.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 9, 2025. *Id.* ¶ 18. On March 20, 2025, the EEOC issued a Notice of Right to Sue. *Id.*

### B. Procedural Background

On June 20, 2025, Plaintiff filed the instant Complaint asserting claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Dkt. 1. On September 10, 2025, Defendants filed a Motion to Dismiss and Motion to Compel Arbitration. Dkt. 3. Following a Notice of Correction from the Clerk's Office, on September 11, 2025, Defendants refiled the Motion to Compel Arbitration as a separate docket entry. Dkt. 9. The same day, this Court notified Plaintiff of Defendants' Motion and Plaintiff's right to reply within twenty-one days pursuant to *Roseboro v.*

3

*Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 12. On September 24, 2025, Plaintiff filed her Opposition. Dkt. 17. On October 1, 2025, Defendants filed their Reply. Dkt. 18. On October 7, 2025, Plaintiff filed a Sur-Reply. Dkt. 19.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") stipulates that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The effect of [this] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Likewise, the FAA was passed in order "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Rader v. Nw. Fed. Credit Union*, 2024 WL 388097, at *4 (E.D. Va. Feb. 1, 2024) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000)). Consequently, there is "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

When reviewing a motion to compel arbitration, "the Court may consider materials outside of the pleadings, including all relevant, admissible evidence submitted by the parties." *Eubank v. Camping World RV Sales, LLC*, 764 F. Supp. 3d 321, 323 (E.D. Va. 2025).

## III. ANALYSIS

The Court must compel arbitration under the FAA if: "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015); *see also Montoya v. King.com Ltd.*, 2024 WL 1680028, at *5 (E.D. Va. Apr. 18, 2024) ("If there is a valid agreement to arbitrate, and the dispute falls within the scope of that agreement, the court shall compel arbitration."). Courts should apply "ordinary state-law principles that govern the formation of contracts" when deciding whether an arbitration agreement exists between the parties. *First Options*

4

*of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the Court determines that an arbitration agreement exists between the parties, then "it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Here, Plaintiff does not contest that her claims fall within the scope of the Arbitration Agreement, Dkt. 17 at 3, and the Court otherwise finds that Plaintiff's Title VII claims clearly fall within the plain language of the Agreement, *see* Dkt. 4-1 at 4 ("This agreement to arbitrate includes any disputes . . . arising out of or relating to your employment . . . including but not limited to (1) any claims of discrimination . . . or retaliation . . . ."). Accordingly, the Court focuses its analysis on whether the Arbitration Agreement is valid.

Virginia law requires "offer, acceptance, and valuable consideration" for the formation of a contract. *Lester v. TMG, Inc.*, 896 F. Supp. 2d 482, 485 (E.D. Va. 2012).[4] Under Virginia law, "a written agreement to submit any existing controversy to arbitration . . . between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or equity for the revocation of any contract." Va. Code § 8.01-581.01.

All three elements of a valid contract are met here. Defendant extended an offer when it sent Plaintiff a copy of the Arbitration Agreement signed by its General Counsel. Plaintiff then accepted the Arbitration Agreement by signing and returning the Agreement, as evidenced by her digital signature and the possession of Defendant of the signed copy. Dkt. 10-1 at 4. And the Arbitration Agreement is supported by valuable consideration because it binds both parties to resolve their disputes through arbitration. *See id.* ("This agreement to arbitrate includes any disputes that the Company may

---

[4] Despite Plaintiff never explicitly stating that the Arbitration Agreement was signed in Virginia, Defendants cite Virginia law governing the existence of an arbitration agreement in their Memorandum in Support of the Motion to Dismiss. Dkt. 10 at 5–6. Plaintiff has not objected to Virginia law governing the issue, and has cited case law analyzing the validity of contracted-for waivers of rights in Virginia. *See* Dkt. 17 at 4. Therefore, Plaintiff has consented to the application of Virginia law. *See Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 781–82. (4th Cir. 2023).

have against you, and any disputes that you may have against the Company or any of its employees, supervisors, managers or agents . . . ."); *Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998) (holding that a mutual agreement to be bound by an arbitration agreement constitutes sufficient consideration). Therefore, the Arbitration Agreement is a validly formed contract under Virginia law.

In her Opposition, Plaintiff argues that the Agreement is nonetheless unenforceable because (1) "Plaintiff never signed it or knowingly consented" and (2) the Agreement "cannot override statutory rights under Title VII." Dkt. 17 at 3. Not so.

Under Virginia law, signatures are presumed to be authentic until evidence is introduced that would support a finding that the signature is forged or unauthorized. *See Virginia Nat. Bank v. Holt*, 216 Va. 500, 502–03 (1975); *David v. Summit Cmty. Bank*, 2023 WL 5615983, at \*5 (E.D. Va. Aug. 30, 2023) (holding that the "mere presentation of *any* evidence" as to forgery or lack of authorization is not sufficient under Virginia law, but rather the evidence must be sufficient to permit a finding in the challenger's favor). Here, Plaintiff has introduced no evidence to support a finding that the signature is forged or inauthentic. To the extent that Plaintiff is suggesting that her signature is not valid because it is an electronic signature, she is incorrect—electronic signatures cannot be excluded solely because they are in electronic form. Va. Code § 59.1-491. And judges in this District have recognized that "[a] contract is no less a contract simply because it is entered into via a computer." *Hosseini v. Upstart Network, Inc.*, 2020 WL 573126, at \*6 (E.D. Va. Feb. 5, 2020) (citing *A. V. v. iParadigms, LLC*, 544 F. Supp. 2d 473, 480 (E.D. Va. 2008)). Moreover, Defendants have produced a declaration made under penalty of perjury that the Arbitration Agreement in the record "is a true and correct copy of the arbitration agreement executed on January 6, 2022 by Ms. Law-Tillery." Dkt. 10-1 ¶¶ 2, 3. Accordingly, the Court finds that Plaintiff did sign the Agreement, and thus her argument in this regard fails.

The Fourth Circuit and judges in this District have also squarely rejected the suggestion that simply failing to read a contract is enough to invalidate it. *See, e.g., Sydnor v. Conseco Fin. Servicing*

6

*Corp.*, 252 F.3d 302 (4th Cir. 2001) ("[A] party signing a written contract has a duty 'to inform himself of its contents before executing it, . . . and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it."). That is, a party is presumed to read and understand the contents of a contract before signing it. *See Johnson v. Opportunity Fin., LLC*, 2023 WL 2636712, at \*10 (E.D. Va. Mar. 24, 2023) (quoting *Metro Realty of Tidewater, Inc. v. Woolard*, 286 S.E.2d 197, 200 (Va. 1982)); *see also Wood v. Omni Fin. of Nevada, Inc.*, 2023 WL 3766524, at \*15 (E.D. Va. May 31, 2023) (noting that "a reasonably diligent plaintiff would have known that simply by reading the loan documents").

Plaintiff's argument that the Agreement cannot override Title VII fares no better. Indeed, "[i]t is settled that the provisions of the FAA, and its policy favoring the resolution of disputes through arbitration, apply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002).

Thus, for all of these reasons, the Court finds that there is a valid agreement to arbitrate and that this matter falls within the scope of that agreement. Accordingly, the Court will compel arbitration. *See Montoya*, 2024 WL 1680028, at \*5.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that the Motion to Compel Arbitration (Dkt. 9) is GRANTED; and it is

FURTHER ORDERED that the parties are DIRECTED to submit their claims to binding arbitration in accordance with the Arbitration Agreement (Dkt. 10-1 at 4); and it is

FURTHER ORDERED that this matter is STAYED pending arbitration of these claims and the Clerk of the Court is DIRECTED to place this matter among the inactive causes; and it is

7

FURTHER ORDERED that the Motion to Dismiss for Failure to State a Claim (Dkt. 3) is DENIED without prejudice to refiling if appropriate following the completion of the arbitration proceedings; and it is

FURTHER ORDERED that the parties are DIRECTED to file a status report with the Court within FOURTEEN (14) DAYS of the issuance of an arbitration decision so that this Court can take further action or close this case.

It is SO ORDERED.

Alexandria, Virginia
July 29, 2026

_____ /s/
Rossie D. Alston, Jr.
United States District Judge

8